CV-08 0156

The Law Office of
John P. Gianfortune, P.C.
Attorneys for Plaintiffs
265 Sunrise Highway, Suite 30
Rockville Centre NY 11570
(516) 678-9797

FILED
IN CLERK'S OFFICE
US DISTRICT COURT EDNY
★ JAN 11 2008 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE and SALVATORE JOHN GIANFORTUNE,

Plaintiffs,

-against-

BRADLEY GLUCK, ALEKSANDRA LIBERMAN, and HAMPTON RADIOLOGY, P.C.,

Defendants.

**Complaint**

JURY TRIAL DEMANDED

BIANCO, J.

TOMLINSON, M

Plaintiff NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE and Plaintiff SALVATORE JOHN GIANFORTUNE, by and through their attorneys at THE LAW OFFICE OF JOHN P. GIANFORTUNE, P.C., complaining of Defendants, their agents, servants, and employees, upon information and belief, set forth and allege as follows:

## PRELIMINARY STATEMENT

1. That this action seeks compensatory damages, costs and attorneys' fees for personal injuries, pain, suffering and loss of consortium, sustained as a result of Defendants' negligence and medical malpractice in the failure to timely diagnose and treat a cerebral aneurysm in Plaintiff NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE.

## JURISDICTION AND VENUE

2. Jurisdiction is pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship and the amount involved, exclusive of interest and costs, exceeds One Hundred Fifty Thousand ($150,000.00) Dollars.

3. This action properly lies in the Eastern District of New York pursuant to 28 U.S.C. §1391(a)(2), as the claims arose in this jurisdiction, namely, the medical malpractice, the mis-diagnoses, and the failure to timely treat the condition at issue occurred in this judicial district.

## THE PARTIES

4. That Plaintiff NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE and Plaintiff SALVATORE JOHN GIANFORTUNE, are both adult individuals residing at 2983 Galindo Circle, Town of Viera, County of Brevard, State of Florida.

5. That Defendant BRADLEY GLUCK, (hereinafter "Defendant GLUCK") is an adult individual residing at 44 Wireless Way, Southampton, County of Suffolk, State of New York.

6. That at all times hereinafter mentioned, Defendant GLUCK was, and remains a physician duly licensed to practice medicine within the State of New York under license number 175471.

7. That Defendant ALEKSANDRA LIBERMAN (hereinafter "Defendant LIBERMAN") is an adult individual residing at 3 Higbee Road, Hampton Bays, County of Suffolk, State of New York.

8. That at all times hereinafter mentioned, Defendant LIBERMAN was, and remains a physician duly licensed to practice medicine within the State of New York under license number 210674.

9. That at all times hereinafter mentioned, Defendant HAMPTON RADIOLOGY, P.C., was,

and remains a corporation duly organized and existing and by virtue of the laws of the State of New York, with its principal executive office located at 1333 Roanoke Avenue, Riverhead, County of Suffolk, State of New York.

10. That at all times hereinafter mentioned, Defendant HAMPTON RADIOLOGY, P.C., was, and remains a corporation duly organized and existing and by virtue of the laws of the State of New York, with its principal facility for providing care located at Hampton Medical Atrium, 182 West Montauk Highway, Building B, Hampton Bays, County of Suffolk, State of New York.

FACTS COMMON TO ALL CAUSES OF ACTION

11. That at all times hereinafter mentioned, Defendant HAMPTON RADIOLOGY, P.C., was a medical facility duly licensed by the State of New York.

12. That prior to and at all times hereinafter mentioned, Defendant HAMPTON RADIOLOGY, P.C., owned, operated, managed, and controlled the facilities operating under the same name, located at the Hampton Medical Atrium, 182 West Montauk Highway, Building B, Hampton Bays, County of Suffolk, State of New York.

13. That prior to and at all times hereinafter mentioned, Defendant HAMPTON RADIOLOGY, P.C., fully equipped and staffed the aforementioned facility for the diagnosis, care, and treatment of sick and injured persons requiring radiologic diagnostic and imaging studies inclusive of the performance, interpretation, and reporting of Magnetic Resonance Imaging studies (hereinafter "MRI studies").

14. That at all times hereinafter mentioned, Defendant HAMPTON RADIOLOGY, P.C., held itself out to the public generally, and to Plaintiffs in particular, as a competent and qualified facility which was staffed and equipped to provide the proper the performance, thorough interpretation, and

complete and thorough reporting of MRI studies in accordance with good and accepted standards of medical care.

15. That at all times hereinafter mentioned, Defendant HAMPTON RADIOLOGY, P.C., held itself out of the public generally, and to Plaintiffs in particular, as a facility that would provide trained and experienced technicians and doctors, highly skilled in the performance, interpretation, and reporting of MRI studies.

16. That at all times hereinafter mentioned, Defendant GLUCK held himself out to the public generally, and to Plaintiffs in particular as being a specialist in internal medicine and diagnostic radiology, including but not limited to the performance, interpretation, and reporting of MRI studies in particular.

17. That at all times hereinafter mentioned, Defendant GLUCK represented himself to be a specialist in the fields of internal medicine, diagnostic radiology, and all matters of medicine related or associated therewith; that he represented further he possessed the necessary education, experience, qualifications and skill necessary as a specialist in such fields; and further, that he did hold himself out to be a specialist, to wit: exercised that degree of skill and knowledge which is ordinarily possessed by similar specialists in the New York metropolitan area.

18. That at all times hereinafter mentioned, these Plaintiffs relied upon these aforementioned representations in choosing Defendant HAMPTON RADIOLOGY, P.C., and Defendant GLUCK, for the performance, interpretation, and reporting of the MRI study at issue.

19. That at all times hereinafter mentioned, Defendant GLUCK was and remains an employee of Defendant HAMPTON RADIOLOGY, P.C.

20. That at all times hereinafter mentioned, Defendant GLUCK was and remains a shareholder of Defendant HAMPTON RADIOLOGY, P.C.

21. That at all times hereinafter mentioned, Defendant LIBERMAN held herself out to the public generally, and to Plaintiffs in particular as being a specialist in internal medicine, primary care medicine, and the associated diagnosis, treatment, and early detection of disorders of the brain, including but not limited to cerebral aneurysm.

22. That at all times hereinafter mentioned, Defendant LIBERMAN represented herself to be a specialist in the fields of internal medicine, primary care medicine, and all matters of medicine related or associated therewith; that she represented further she possessed the necessary education, experience, qualifications and skill necessary as a specialist in such fields; and further, that she did hold herself out to be a specialist, to wit: exercised that degree of skill and knowledge which is ordinarily possessed by similar specialists in the New York metropolitan area.

23. That at all times hereinafter mentioned, these Plaintiffs relied upon these aforementioned representations in choosing Defendant LIBERMAN for their primary medical care, and for the early detection and treatment of disease, including but not limited to the headaches complained of by Plaintiff NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE, and underlying cerebral aneurysm at issue herein.

24. That in August and September, 2007, and for some time prior thereto, Plaintiff NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE, presented to Defendant LIBERMAN, complaining of severe and persistent headaches.

25. That Defendant LIBERMAN knew or should have known that the differential diagnosis for headaches such as those complained of by this Plaintiff included cerebral aneurysm.

26. That Defendant LIBERMAN knew or should have known that headaches such as those complained of by this Plaintiff were caused by cerebral aneurysm.

27. That a cerebral aneurysm is a cerebrovascular disorder in which weakness in the wall

of a cerebral artery leads to a localized dilation or ballooning of a blood vessel.

28. That Defendant LIBERMAN knew or should have known that the most common location for a cerebral aneurysm is on the arteries at the base of the brain, known as the Circle of Willis.

29. That either in August or September, 2007, Defendant LIBERMAN requested an MRI study of this Plaintiff's brain.

30. That either in August or September, 2007, Defendant LIBERMAN requested an MRI study of this Plaintiff's brain to rule out, in whole or in part, cerebral aneurysm on the arteries at the base of the brain, known as the Circle of Willis.

31. That this Plaintiff timely presented to Defendant HAMPTON RADIOLOGY, P.C., for the completion of the MRI study of the brain requested by Defendant LIBERMAN.

32. That the MRI study of this Plaintiff's brain was conducted at Defendant HAMPTON RADIOLOGY, P.C., on or about September 10, 2007.

33. That this MRI study of this Plaintiff's brain was read, interpreted, and reported thereafter by Defendant GLUCK.

34. That prior to reading, interpreting, and reporting the results of this MRI study, Defendant GLUCK knew this Plaintiff was complaining of severe and persistent headaches.

35. That Defendant GLUCK knew or should have known that the differential diagnosis for headaches such as those complained of by this Plaintiff included cerebral aneurysm.

36. That Defendant GLUCK knew or should have known that headaches such as those complained of by this Plaintiff were caused by cerebral aneurysm.

37. That Defendant GLUCK knew or should have known that the most common location for a cerebral aneurysm is on the arteries at the base of the brain, known as the Circle of Willis.

38. That Defendant GLUCK failed to examine, review, or comment on the arteries at the base of the brain, known as the Circle of Willis, which were clearly depicted on the MRI imaging study of this Plaintiff, when he interpreted said study and reported his interpretation thereof.

39. That Defendant GLUCK reported his interpretation of this MRI imaging study as an "Essentially negative exam."

40. That the report of the MRI study issued by Defendant GLUCK, neither commented upon, nor interpreted any of the depictions containing the arteries at the base of the brain, known as the Circle of Willis, and was in fact, silent as to these anatomical structures.

41. That sometime after September 10, 2007, Defendant LIBERMAN received Defendant GLUCK's report interpreting the MRI study of this Plaintiff's brain.

42. That after receiving Defendant GLUCK's interpretation of the aforementioned MRI imaging study, Defendant LIBERMAN failed to request a further examination, further study, further review, or further comment on the arteries at the base of the brain, known as the Circle of Willis.

43. That after receiving Defendant GLUCK's interpretation of the aforementioned MRI imaging study, which was silent as to the arteries at the base of the brain, Defendant LIBERMAN failed to request a further examination, further study, further review, or further comment on the arteries at the base of the brain, known as the Circle of Willis, despite knowing that the differential diagnosis for headaches such as those complained of by this Plaintiff included cerebral aneurysm, and that the most common location for a cerebral aneurysm is on the arteries at the base of the brain.

44. That despite the interpretation and report of Defendant GLUCK to the contrary, in actuality, the MRI imaging study conducted of this Plaintiff's brain on or about September 10, 2007, clearly and unambiguously depicted a large cerebral aneurysm of the anterior communicating artery within the Circle of Willis.

45. That as a result of each and every Defendants' failure to properly consider and examine the arteries at the base of the Plaintiff's brain in accord with good and accepted practice, the aneurysm then and there existing remained undetected and untreated; it worsened and eventually hemorrhaged on or about November 14, 2007, causing a subarachnoid hemorrhage and the tremendous injuries and damages herein set forth.

46. That following the aforesaid MRI study on or about September 10, 2007, said Plaintiff received neither prompt nor reasonable medical care and treatment, nor a correct diagnosis concerning her condition, and was thereby denied any opportunity for a cure or treatment of said aneurysm prior to its hemorrhage; such treatment that was denied due to the malpractice included but was not limited to, minimally invasive endovascular neurosurgery for placement of a Guglielmi detachable coil a/k/a GDC coiling, or pre-hemorrhage surgical clipping.

47. That as a result of this failure to provide timely diagnosis and timely treatment to this Plaintiff, her medical condition has continued to deteriorate and worsen, and she has been caused tremendous pain and suffering from the injuries and damage herein alleged.

## A FIRST CAUSE OF ACTION IN MEDICAL MALPRACTICE

48. Plaintiffs herein repeat, reiterate and reallege each and every allegation of this Complaint as alleged in paragraphs numbered "1" through "47", inclusive, with the same force and effect as if more fully and completely set forth at length herein.

49. That Plaintiff NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE became a patient of Defendants, and/or each of them, for the purpose of obtaining medical services.

50. That thereafter, Defendants were obligated under the laws of the State of New York to have and to exercise that reasonable degree of knowledge and skill that is expected of those who

hold themselves out as specialists in their respective fields as aforesaid, who provide like services within the metropolitan New York area.

51. That Defendants were further obligated under the laws of the State of New York to exercise reasonable care under the circumstances and conform to good and accepted practice.

52. That the injuries herein mentioned and described were sustained by Plaintiff NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE as a result of breaches of the aforesaid duties by Defendants, and/or each of them.

53. That said acts and/or omissions of Defendants, their agents, servants and/or employees, inasmuch as they were negligent, careless, reckless and departed from accepted medical practice in their care, treatment and services rendered to said Plaintiff during the course of her care were as follows: in misinterpreting the aforementioned MRI imaging study as being essentially negative, when in fact, it clearly depicted a cerebral aneurysm located at the anterior communicating artery; in failing to examine the arteries at the base of the brain for aneurysm when reviewing, interpreting, and reporting on the aforementioned MRI study; in failing to timely and accurately report the aneurysm that existed on the aforementioned MRI study; in failing to examine the arteries at the base of the brain for aneurysm when reviewing, interpreting, and reporting on the aforementioned MRI study, when Defendants knew Plaintiff was complaining of headaches and that the differential diagnosis for headaches such as those complained of by this Plaintiff included cerebral aneurysm, and further, that the most common location for a cerebral aneurysm is on the arteries at the base of the brain; in issuing an interpretive report on the brain MRI study, and making the report silent as to the arteries at the base of the brain known as the Circle of Willis, when Defendants knew Plaintiff was complaining of headaches and Defendants knew the differential diagnosis for headaches such as those complained of by this Plaintiff included cerebral aneurysm,

and further, that the most common location for a cerebral aneurysm is on the arteries at the base of the brain; in Defendant LIBERMAN's failure, upon receiving the report issued by Defendant GLUCK which was silent as to the arteries at the base of the brain, to request a further examination, further study, further review, or further comment on the arteries at the base of the brain, known as the Circle of Willis, despite knowing that the differential diagnosis for headaches such as those complained of by this Plaintiff included cerebral aneurysm, and that the most common location for a cerebral aneurysm is on the arteries at the base of the brain, and further still, that early detection and treatment of said aneurysm was available and necessary to prevent subarachnoid hemorrhage; in failing to refer Plaintiff to neurosurgery specialist; in denying Plaintiff any and all opportunity for a cure of the cerebral aneurysm prior to its hemorrhage; in causing, permitting, and allowing Plaintiff to suffer a subarachnoid hemorrhage and its devastating consequences; in causing, allowing, and permitting the aneurysm to hemorrhage, thereby creating new injuries and causing her condition to worsen and deteriorate; and in otherwise being careless and negligence in the premises.

54. That the action of Defendants deprived this Plaintiff a reasonable opportunity to cure or treat her aneurysm and avoid the devastating consequences of the subarachnoid hemorrhage she sustained on or about November 14, 2007.

55. That by virtue of said acts and/or omissions of Defendants and/or each of them, this Plaintiff sustained serious and severe personal injuries; has been rendered sick, sore, lame and disabled; sustained a loss of enjoyment of life; has sustained injuries of a permanent and lasting nature; has been rendered permanently and completely disabled; was compelled to undergo additional medical treatment and multiple surgeries, including but not limited to a craniotomy, ventriculostomy, craniectomy, and the removal of a small portion of her left frontal lobe; may require future surgery; suffered pain and discomfort; suffered, still suffers, and will continue to suffer, severe

distress of body and mind, and loss of enjoyment of life; has been compelled to and has necessarily expended sums of money and incurred and expenses, and in the future, will necessarily pay for medical care, attention, medicine and other expenses as a result of the foregoing.

56. That this action falls within one or more of the exceptions set forth in New York's CPLR §1602.

57. That Plaintiffs will rely on the doctrine of *respondeat superior*.

58. That Plaintiffs will rely on the doctrine of *res ipsa loquitur*.

59. That the aforementioned incident occurred without any fault by this Plaintiff.

60. That Plaintiff herein demands to become compensated for each and every item of damage sustained as hereinbefore set forth in an amount to be determined by this Court.

61. That as a result of the foregoing, Plaintiff NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE, has been damaged in an amount not to exceed TEN MILLION ($10,000,000.00) DOLLARS.

## A SECOND CAUSE OF ACTION IN LOSS OF CONSORTIUM

62. Plaintiffs herein repeat, reiterate and reallege each and every allegation of this Complaint as alleged in the paragraphs marked "1" through "61", inclusive, with the same force and effect as if more fully and completely set forth at length herein.

63. That prior to the commencement of this action, and at all times hereinafter stated, Plaintiff SALVATORE JOHN GIANFORTUNE was and still is the spouse of Plaintiff NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE, with whom at all times hereinbefore mentioned, he resided and still resides.

64. That by reason of said occurrence, this Plaintiff suffered and will continue to suffer

the loss of the services, society and companionship of his said spouse; was and will be required to pay therefor; and was otherwise injured and damaged.

65. That Plaintiff SALVATORE JOHN GIANFORTUNE herein demands to be compensated for each and every item of damage sustained by him as hereinbefore set forth in an amount to be determined by this court.

66. That as a result of the foregoing, Plaintiff SALVATORE JOHN GIANFORTUNE, has been damaged in an amount not to exceed FIVE MILLION ($5,000,000.00) DOLLARS.

DEMAND FOR A JURY TRIAL

67. Plaintiff demands trial by jury of all issues so triable as of right by jury.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Honorable Court determine judgment against Defendants as follows:

a. In the First Cause of Action in an amount not to exceed TEN MILLION ($10,000,000.00) DOLLARS;

b. In the Second Cause of Action in an amount not to exceed FIVE MILLION ($5,000,000.00) DOLLARS.;

c. Costs, disbursements and attorneys' fees of this action.

Dated: Rockville Centre, New York
January 3, 2008

Yours, etc.

The Law Office of
JOHN P. GIANFORTUNE, P.C.
Attorneys for Plaintiffs
265 Sunrise Highway, Suite 30
Rockville Centre, N.Y. 11570
(516) 678-9797
File No: 3439
By:

John P. Gianfortune, Esq. (JG-4762)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE and SALVATORE JOHN GIANFORTUNE,

Plaintiffs,

-against-

BRADLEY GLUCK, ALEKSANDRA LIBERMAN, and HAMPTON RADIOLOGY, P.C.,

Defendants.

# Verification

STATE OF FLORIDA )
COUNTY OF BREVARD )ss:

SALVATORE JOHN GIANFORTUNE, being duly sworn, deposes and says:

1. I am over the age of eighteen.

2. That I am a plaintiff herein, and as such am fully familiar with all of the facts and circumstances surrounding this matter.

3. That I have read the foregoing Complaint and know the contents thereof.

4. That same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

SALVATORE JOHN GIANFORTUNE

Sworn to before me this
3rd day of January, 2008

Joan Rene Soderberg
Notary Public

NOTARY PUBLIC STATE OF FLORIDA
JOAN RENE SODERBERG
MY COMMISSION # DD332542
EXPIRES: June 24, 2008
1-800-3-NOTARY Fl. Notary Discount Assoc. Co.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NANCY GIANFORTUNE a/k/a NANCI GIANFORTUNE and SALVATORE JOHN GIANFORTUNE,

Plaintiffs,

-against-

BRADLEY GLUCK, ALEKSANDRA LIBERMAN, and HAMPTON RADIOLOGY, P.C.,

Defendants.

# Certificate of Merit

STATE OF NEW YORK )
COUNTY OF NASSAU )ss:

JOHN P. GIANFORTUNE, ESQ., being duly sworn, deposes and says:

1. I am an attorney duly admitted to practice law in the Courts of the State of New York and the Eastern District of New York.

2. That I am the attorney for the plaintiffs herein, and as such am fully familiar with all of the facts and circumstances surrounding this matter.

3. That I submit this certification pursuant to the requirements of New York's CPLR §3012-a.

4. That I have reviewed the available facts of this case.

5. That I have consulted with at least one physician who is licensed to practice in this state or any other state and who I reasonably believe is knowledgeable in the relevant issues involved

in the particular action and that I have concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of the within action.

John P. Gianfortune, Esq. (JG-4762)

Sworn to before me this
11 day of January, 2008

Notary Public

**Jacqueline Rodriguez**
**Notary Public State of New York**
01RO6117120
**Qualified in Nassau County**
**Commission Expires 10-18-08**